IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON


VICTORIA CARLA UNDERWOOD,                    3:11-cv-01383-BR

          Plaintiff,                         OPINION AND ORDER

v.

MICHAEL J. ASTRUE,
Commissioner of Social
Security,

          Defendant.


TIM D. WILBORN
P.O. Box 370578
Las Vegas, NV 89137
(702) 240-0184

          Attorney for Plaintiff

S. AMANDA MARSHALL
United States Attorney
ADRIAN L. BROWN
Assistant United States Attorney
1000 S.W. Third Avenue, Suite 600
Portland, OR  97204-2902
(503) 727-1053


1 - OPINION AND ORDER

**DAVID MORADO**
Regional Chief Counsel
**JOSE R. HERNANDEZ**
Special Assistant United States Attorney
Social Security Administration
1301 Young Street
Suite A702
Dallas, TX 75202
(214) 767-3638

Attorneys for Defendant

**BROWN, Judge.**

Plaintiff Victoria Carla Underwood seeks judicial review of a final decision of the Commissioner of the Social Security Administration (SSA) in which he denied Plaintiff's application for Supplemental Security Income (SSI) under Title XVI of the Social Security Act. This Court has jurisdiction to review the Commissioner's final decision pursuant to 42 U.S.C. § 405(g).

Following a review of the record, the Court **AFFIRMS** the decision of the Commissioner and **DISMISSES** this matter.

## ADMINISTRATIVE HISTORY

Plaintiff filed an application for SSI on November 16, 2007, alleging a disability onset date of March 2, 2007. Tr. 141-43.[1] The application was denied initially and on reconsideration. An Administrative Law Judge (ALJ) held a hearing on January 8, 2010.

---

[1] Citations to the official transcript of record filed by the Commissioner on April 25, 2012, are referred to as "Tr."

2 - OPINION AND ORDER

Tr. 34-82.  Plaintiff was represented by an attorney at the hearing.  Plaintiff, a lay witness, and a vocational expert (VE) testified at the hearing.

The ALJ issued a decision on February 26, 2010, in which she found Plaintiff is not disabled and, therefore, is not entitled to benefits.  Tr. 17-29.  Pursuant to 20 C.F.R. § 404.984(d), that decision became the final decision of the Commissioner on September 16, 2011, when the Appeals Council denied Plaintiff's request for review.


## BACKGROUND

Plaintiff was born on January 9, 1973, and was 36 years old at the time of the hearing.  Tr. 141.  She has a GED.  Tr. 41.  Plaintiff does not have any past relevant work experience. Tr. 28.

Plaintiff alleges disability due to diabetes, obesity, carpal-tunnel syndrome, and chronic pain.  Tr. 173.

Except when noted, Plaintiff does not challenge the ALJ's summary of the medical evidence.  After carefully reviewing the medical records, this Court adopts the ALJ's summary of the medical evidence.  *See* Tr. 22-23, 27.


## STANDARDS

The initial burden of proof rests on the claimant to

3 - OPINION AND ORDER

establish disability. *Molina v. Astrue*, 674 F.3d 1104, 1110 (9th Cir. 2012). To meet this burden, a claimant must demonstrate her inability "to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which . . . has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A). The ALJ must develop the record when there is ambiguous evidence or when the record is inadequate to allow for proper evaluation of the evidence. *McLeod v. Astrue*, 640 F.3d 881, 885 (9th Cir. 2011)(quoting *Mayes v. Massanari,* 276 F.3d 453, 459-60 (9th Cir. 2001)).

The district court must affirm the Commissioner's decision if it is based on proper legal standards and the findings are supported by substantial evidence in the record as a whole. 42 U.S.C. § 405(g). *See also Brewes v. Comm'r of Soc. Sec. Admin.*, 682 F.3d 1157, 1161 (9th Cir. 2012). Substantial evidence is "relevant evidence that a reasonable mind might accept as adequate to support a conclusion." *Molina*, 674 F.3d. at 1110-11 (quoting *Valentine v. Comm'r Soc. Sec. Admin.*, 574 F.3d 685, 690 (9th Cir. 2009)). It is more than a mere scintilla [of evidence] but less than a preponderance. *Id.* (citing *Valentine*, 574 F.3d at 690).

The ALJ is responsible for determining credibility, resolving conflicts in the medical evidence, and resolving

ambiguities.  *Vasquez v. Astrue*, 572 F.3d 586, 591 (9th Cir. 2009).  The court must weigh all of the evidence whether it supports or detracts from the Commissioner's decision.  *Ryan v. Comm'r of Soc. Sec.*, 528 F.3d 1194, 1198 (9th Cir. 2008).  Even when the evidence is susceptible to more than one rational interpretation, the court must uphold the Commissioner's findings if they are supported by inferences reasonably drawn from the record.  *Ludwig v. Astrue*, 681 F.3d 1047, 1051 (9th Cir. 2012).  The court may not substitute its judgment for that of the Commissioner.  *Widmark v. Barnhart*, 454 F.3d 1063, 1070 (9th Cir. 2006).

## DISABILITY ANALYSIS

### I.   The Regulatory Sequential Evaluation

Social Security Regulations set out a five-step sequential process for determining whether an applicant is disabled within the meaning of the Social Security Act.  20 C.F.R. § 416.920.  *See also Keyser v. Comm'r of Soc. Sec. Admin.*, 648 F.3d 721, 724 (9th Cir. 2011).  Each step is potentially dispositive.

At Step One the claimant is not disabled if the Commissioner determines the claimant is engaged in substantial gainful activity.  20 C.F.R. § 416.920(a)(4)(i).  *See also Keyser*, 648 F.3d at 724.

At Step Two the claimant is not disabled if the Commissioner

determines the claimant does not have any medically severe impairment or combination of impairments.  20 C.F.R. § 416.920(a)(4)(ii).  *See also Keyser*, 648 F.3d at 724.

At Step Three the claimant is disabled if the Commissioner determines the claimant's impairments meet or equal one of the listed impairments that the Commissioner acknowledges are so severe as to preclude substantial gainful activity.  20 C.F.R. § 416.920(a)(4)(iii).  *See also Keyser*, 648 F.3d at 724.  The criteria for the listed impairments, known as Listings, are enumerated in 20 C.F.R. part 404, subpart P, appendix 1 (Listed Impairments).

If the Commissioner proceeds beyond Step Three, he must assess the claimant's residual functional capacity (RFC).  The claimant's RFC is an assessment of the sustained, work-related physical and mental activities the claimant can still do on a regular and continuing basis despite her limitations.  20 C.F.R. § 416.920(e).  *See also* Social Security Ruling (SSR) 96-8p.  "A 'regular and continuing basis' means 8 hours a day, for 5 days a week, or an equivalent schedule."  SSR 96-8p, at *1.  In other words, the Social Security Act does not require complete incapacity to be disabled.  *Taylor v. Comm'r of Soc. Sec. Admin.*, 659 F.3d 1228, 1234-35 (9th Cir. 2011)(citing *Fair v. Bowen,* 885 F.2d 597, 603 (9th Cir. 1989)).

At Step Four the claimant is not disabled if the

Commissioner determines the claimant retains the RFC to perform work she has done in the past.  20 C.F.R. § 416.920(a)(4)(iv).  *See also Keyser*, 648 F.3d at 724.

If the Commissioner reaches Step Five, he must determine whether the claimant is able to do any other work that exists in the national economy.  20 C.F.R. § 416.920(a)(4)(v).  *See also Keyser*, 648 F.3d at 724-25.  Here the burden shifts to the Commissioner to show a significant number of jobs exist in the national economy that the claimant can perform.  *Lockwood v. Comm'r Soc. Sec. Admin.*, 616 F.3d 1068, 1071 (9th Cir. 2010).  The Commissioner may satisfy this burden through the testimony of a VE or by reference to the Medical-Vocational Guidelines set forth in the regulations at 20 C.F.R. part 404, subpart P, appendix 2.  If the Commissioner meets this burden, the claimant is not disabled.  20 C.F.R. § 416.920(g)(1).

## ALJ'S FINDINGS

At Step One, the ALJ found Plaintiff has not engaged in substantial gainful activity since November 9, 2007.  Tr. 22.

At Step Two, the ALJ found Plaintiff has the severe impairments of diabetes mellitus, type II, with nueropathy; degenerative disc disease; obesity; and carpal-tunnel syndrome.  Tr. 22.  The ALJ found Plaintiff's impairments of depression, post-traumatic stress disorder (PTSD), and history of substance

abuse are nonsevere.  Tr. 24.

At Step Three, the ALJ concluded Plaintiff's medically determinable impairments do not meet or medically equal one of the listed impairments in 20 C.F.R. part 404, subpart P, appendix 1.  Tr. 24.  The ALJ found Plaintiff has the RFC to perform less than the full range of light work.  Tr. 25.  The ALJ also found Plaintiff "needs a sit/stand option at least once an hour"; can occasionally climb ramps and stairs but never climb ladders, ropes or scaffolds; can occasionally balance, crawl, stoop, kneel, and crouch; should avoid "concentrated exposure to hazards such as machinery and heights"; and "can frequently but not constantly perform handling and grasping with both hands." Tr. 25.

At Step Four, the ALJ found Plaintiff does not have any past relevant work experience.  Tr. 28.

At Step Five, the ALJ found Plaintiff can perform jobs that exist in significant numbers in the national economy. Tr. 28.  Accordingly, the ALJ found Plaintiff is not disabled and, therefore, is not entitled to benefits.


## DISCUSSION

Plaintiff contends the ALJ erred when he (1) improperly rejected Plaintiff's testimony, (2) improperly rejected or failed to address lay-witness testimony; (3) improperly rejected

opinions of treating and reviewing physicians; and (4) adopted improper VE testimony.

**I.   The ALJ did not err when he rejected Plaintiff's testimony.**

Plaintiff alleges the ALJ erred when he failed to provide legally sufficient reasons for rejecting Plaintiff's statements concerning the intensity, persistence, and limiting effects of her symptoms.

In *Cotton v. Bowen* the Ninth Circuit established two requirements for a claimant to present credible symptom testimony:  The claimant must produce objective medical evidence of an impairment or impairments, and she must show the impairment or combination of impairments could reasonably be expected to produce some degree of symptom.  *Cotton*, 799 F.2d 1403, 1407 (9th Cir. 1986).  The claimant, however, need not produce objective medical evidence of the actual symptoms or their severity. *Smolen*, 80 F.3d at 1284.

If the claimant satisfies the above test and there is not any affirmative evidence of malingering, the ALJ can reject the claimant's pain testimony only if she provides clear and convincing reasons for doing so.  *Parra v. Astrue,* 481 F.3d 742, 750 (9th Cir. 2007)(citing *Lester v. Chater*, 81 F.3d 821, 834 (9th Cir. 1995)).  General assertions that the claimant's testimony is not credible are insufficient.  *Id*.  The ALJ must identify "what testimony is not credible and what evidence undermines the

9 - OPINION AND ORDER

claimant's complaints." *Id.* (quoting *Lester*, 81 F.3d at 834).

The ALJ found Plaintiff's "medically determinable impairments could reasonably be expected to cause some of the alleged symptoms," but Plaintiff's "statements concerning the intensity, persistence and limiting effects of these symptoms are generally not credible to the extent they are inconsistent with the above [RFC]." Tr. 26.

The ALJ noted in her November 25, 2007, Function Report that Plaintiff stated she was no longer able to dance at powwows or walk more than half a block. Tr. 185. On October 26, 2007, however, Plaintiff reported she had "been walking 3-4 x /wk for 20-30 min." Tr. 775. Similarly, on December 3, 2007, Plaintiff reported walking three times a week for 30 minutes for the previous two weeks. Tr. 771. On December 10, 2007, Plaintiff reported she had not "walked her goal of 30 min three times weekly formally, but has walked for hours in the mall shopping this week." Tr. 767. Similarly, on February 22, 2008, Plaintiff reported "walking 3-4x weekly with son." Tr. 743. On March 17, 2008, Plaintiff advised her treating physician that she was going to dance at a powwow "this weekend." Tr. 285. On December 12, 2008, Plaintiff reported she walked one mile three times a week and swam two laps once weekly. Tr. 1033.

The ALJ also noted Plaintiff has not "always adhered to providers' recommendations for treatment of her diabetes."

10 - OPINION AND ORDER

Tr. 26.  For example, on April 30, 2007, Plaintiff's treating physician noted Plaintiff "hasn't been taking care of herself . . . .  The Lantus and strips are waiting to be picked up at the pharmacy, [Plaintiff] just can't make herself get them.  No probs with paying for meds."  Tr. 837.  Dr. Bowen reported Plaintiff is "supposed to be on Dixepin . . . and Celexa, but not taking them" and is "noncompliant [with diabetes medication] much of the time, home glucose monitoring are [*sic*] not being performed."  Tr. 837.  Similarly, Plaintiff's treating internal medicine resident Douglas Maready reported on May 1, 2008, that Plaintiff "misses about 1 insulin dose daily."  Tr. 267.  On September 19, 2008, Plaintiff's treating physician Meena Mital, M.D., reported Plaintiff's "eating schedule is erratic" and "she misses 3-4 nighttime doses of nighttime NPH per week."  Tr. 254.  Dr. Mital noted she "suspect[s] [Plaintiff's] foot pain is related to worsening neuropathy 2/2 very poorly controlled sugars."  Tr. 255.

The ALJ also noted the record "includes evidence" that Plaintiff has engaged in drug-seeking behavior.  On September 29, 2009, Plaintiff reported to the emergency room with left-leg pain.  Tr. 1244.  Examining physician Yingda Xie, M.D., noted Plaintiff was

> calmly reading magazine each time we walk into
> room.  Will start crying when she starts
> describing her pain, stating "it hurts so much!"
> Will then cease crying suddenly when discussing

11 - OPINION AND ORDER

her insulin and how she missed a dose this AM.

* * *

Talked to staff who have worked with patient in
past - it seems she has been well-identified with
a "dramatic" labile affect in past.  There is a
high-suspicion for some component of narcotic-
seeking behavior to her pain.

Tr. 1246.  On October 9, 2009, Plaintiff reported to the

emergency room with lower-left extremity pain.  Examining

physician Rachel Zubko, M.D., noted

MRI does not explain pain, negative LLE doppler.
Had head CT for weakness in ED, but no obvious
weakness here according to a relatively normal
gait.  Very suspicious of drug-seeking behavior as
history not consistent with normal physical exam
or work up as described.

Tr. 1241.

The Court concludes on this record that the ALJ did not err

when she rejected Plaintiff's testimony because the ALJ provided

legally sufficient reasons supported by the record for doing so.

**II.  The ALJ did not err when she rejected and failed to address
lay-witness testimony.**

Plaintiff contends the ALJ erred when she improperly

rejected the testimony of Plaintiff's mother, Caroline Underwood,

and failed to address statements written by Plaintiff's son and

cousin.

Lay testimony regarding a claimant's symptoms is competent

evidence that the ALJ must consider unless he "expressly

determines to disregard such testimony and gives reasons germane

12 - OPINION AND ORDER

to each witness for doing so." *Lewis v. Apfel*, 236 F.3d 503, 511 (9th Cir. 2001). *See also Merrill ex rel. Merrill v. Apfel*, 224 F.3d 1083, 1085 (9th Cir. 2000)("[A]n ALJ, in determining a claimant's disability, must give full consideration to the testimony of friends and family members.").

**A.    Caroline Underwood**

Caroline Underwood testified at the January 8, 2010, hearing that she is at Plaintiff's house almost every day to help Plaintiff care for her two children. Tr. 67. Underwood testified she bathes Plaintiff's five-year-old and does most of the housework because Plaintiff has trouble standing up and walking. Tr. 67. Underwood noted Plaintiff "drops everything" because of problems with her hands. Tr. 67. Underwood stated Plaintiff "can't walk that far anymore and . . . needs help to get up in the morning." Tr. 68. The ALJ "considered" Underwood's testimony, but the ALJ noted "it is likely influenced by her desire to help" Plaintiff. Tr. 27.

The Ninth Circuit has held the relationship between a witness and a claimant is relevant to weighing the witness's statement, particularly when the witness may be "influenced by her desire to help" the claimant. *Greger v. Barnhart*, 464 F.3d 968, 972 (9th Cir. 2006). Accordingly, the Court concludes the ALJ did not err when she gave Underwood's testimony limited weight because the ALJ provided a legally sufficient reason for

13 - OPINION AND ORDER

doing so.

**B.   Plaintiff's son**

On December 8, 2008, Plaintiff's son provided a written statement in which he notes: "When my mom is sick I help take care of her see her every day and how sick she is."  Tr. 221.

An ALJ is only required to "explain why [s]he chooses to discount significant, probative evidence" and "is not required to discuss all the evidence presented in a case."  *Houghton v. Comm'r Soc. Sec. Admin.*, No. 11-35623, 2012 WL 3298201, at *1 (9th Cir. Aug. 14, 2012)(quotation omitted).  Here Plaintiff's son does not provide any specific information regarding Plaintiff's condition or her ability to work.  The statement of Plaintiff's son, therefore, is not significant, probative evidence that Plaintiff's medical conditions "had some functional impact on [Plaintiff's ability to work."  *Id*.  Accordingly, the Court concludes the ALJ did not err when she failed to address the statement of Plaintiff's son.

**C.   Tippy Cress**

On December 8, 2008, Plaintiff's cousin Tippy Cress provided a written statement in which she stated Plaintiff "is very sick it is hard for her to do basic everyday task's [*sic*]."  Tr. 221.  Cress also noted Plaintiff is in "constant pain everyday."  Tr. 222.  Cress, however, does not provide any specific information about Plaintiff's condition or specific

impairments that make it difficult for her to do basic everyday
tasks.  Cress's statement, therefore, is not significant
probative evidence that Plaintiff's medical conditions "had some
functional impact on [Plaintiff's ability to work." *Houghton*,
2012 WL 3298201, at *1.  Accordingly, the Court concludes the ALJ
did not err when she failed to address Cress's statement.

**III. The ALJ did not err when she gave "some weight" to the opinion of Plaintiff's treating physician and rejected in part the opinion of a nonexamining physician.**

Plaintiff contends the ALJ erred when she rejected the
opinion of Kathryn Glassberg, M.D., treating physician, and
Martin Kehrli, M.D., consultative physician.

An ALJ may reject a treating physician's opinion when it is
inconsistent with the opinions of other treating or examining
physicians if the ALJ makes findings setting forth "specific and
legitimate reasons [for doing so] that are supported by
substantial evidence." *Chaudhry v. Astrue*, 688 F.3d 661, 671
(9th Cir. 2012)(quotation omitted).  When the medical opinion of
an examining or treating physician is uncontroverted, however,
the ALJ must give "clear and convincing reasons" for rejecting
it.  *Hill v. Astrue*, No. 10-35879, 2012 WL 5278388, at *5 (9th
Cir. Oct. 26, 2012)(citation omitted).

A nonexamining physician is one who neither examines nor
treats the claimant.  *Lester*, 81 F.3d at 830.  "The opinion of a
nonexamining physician cannot by itself constitute substantial

evidence that justifies the rejection of the opinion of either an examining physician or a treating physician." *Id.* at 831.  When a nonexamining physician's opinion contradicts an examining physician's opinion and the ALJ gives greater weight to the nonexamining physician's opinion, the ALJ must articulate his reasons for doing so.  *See, e.g.*, *Morgan v. Comm'r of Soc. Sec. Admin*, 169 F.3d 595, 600-01 (9th Cir. 1999).  A nonexamining physician's opinion can constitute substantial evidence if it is supported by other evidence in the record.  *Israel v. Astrue*, No. 11-35794, 2012 WL 4845578, at *1 (9th Cir. Oct. 12, 2012) (citing *Morgan*, 169 F.3d at 600).

**A.    Dr. Glassberg**

In a September 21, 2007, statement, Dr. Glassberg stated:

> The above patient is under my care for Type 2 Diabetes Mellitus and related complications that compromise her ability to function.  In particular, the numbness in her feet (peripheral neuropathy) limits her ability to stand, lift, move, and participate in a 40-hour work week.  I recommend she undergo an assessment for disability.

Tr. 993.  The ALJ gave Dr. Glassberg's opinion "some weight," but the ALJ noted Dr. Glassberg "did not provide any specific limitations and only recommended an assessment." Tr. 27.  The ALJ incorporated the limitation in Plaintiff's ability to stand in Plaintiff's RFC by requiring Plaintiff have a "sit/stand option at least once an hour."  Tr. 25.

16 – OPINION AND ORDER

Plaintiff contends the ALJ should have fully credited Dr. Glassberg's opinion and found Plaintiff to be disabled. Dr. Glassberg opined Plaintiff's diabetes limited her ability to participate in a 40-hour work week and recommended an assessment. Dr. Glassberg, however, did not opine Plaintiff was completely unable to work.

On this record the Court concludes the ALJ did not err when she only gave Dr. Glassberg's opinion "some weight" because the ALJ provided legally sufficient reasons supported by the record for doing so.

**B.  Dr. Kehrli**

On October 16, 2008, Disability Determination Services (DDS)[2] consultative physician Dr. Kehrli opined, among other things, that Plaintiff is "limited" in her "handling (gross manipulation)" abilities, but unlimited in her "fingering (fine manipulation) abilities."  Tr. 998.  Dr. Kehrli also opined Plaintiff was limited in her upper extremities in her ability to push and/or to pull, but she could occasionally "handle" bilaterally with her upper extremities.  Tr. 996.  The ALJ gave Dr. Kehrli's opinion "significant weight," but she found Plaintiff "has the ability to perform frequent handling and

---

[2] DDS is a federally funded state agency that makes eligibility determinations on behalf and under the supervision of the Social Security Administration pursuant to 42 U.S.C. § 421(a).

17 - OPINION AND ORDER

grasping with both hands."  Tr. 27.

Plaintiff contends the ALJ erred when she found Plaintiff has the ability to perform frequent handling despite giving significant weight to Dr. Kehrli's opinion that Plaintiff could perform only occasional handling.  The ALJ, however, pointed out that DDS consultative physician Mary Ann Westfall, M.D., opined on January 24, 2008, that Plaintiff was limited to "freq[uent] (no constant)" fingering and handling.  Tr. 711. The ALJ ultimately gave Dr. Westfall's opinion significant weight and resolved the conflicting consultative physician opinions in favor of Dr. Westfall's opinion.  Tr. 28.  The ALJ noted the medical record in addition to the fact that Plaintiff reported activities such as cooking and doing beadwork on her son's costume for a powwow did not support Dr. Kehrli's opinion regarding Plaintiff's ability to perform handling and fingering. Tr. 27-28.  When "'the record contains conflicting medical evidence, the ALJ is charged with determining credibility and resolving the conflict.'"  *Chaudhry*, 688 F.3d at 671 (quoting *Benton v. Barnhart*, 331 F.3d 1030, 1040 (9th Cir. 2003)).

On this record the Court concludes the ALJ did not err when she rejected Dr. Kehrli's opinion that Plaintiff could only occasionally handle bilaterally with her upper extremities because the ALJ provided legally sufficient reasons supported by the record for doing so.

**IV. The ALJ did not err at Step Five.**

Plaintiff contends the ALJ erred at Step Five when she
(1) failed to include all of the limitations set out by
Plaintiff, the lay witnesses, and Drs. Glassberg and Kehrli in
her hypothetical to the VE and (2) relied on the VE's finding as
to the work in the national economy that someone with Plaintiff's
limitations could perform.

**A. The ALJ did not err when she failed to include all of
the limitations set out by Plaintiff, the lay
witnesses, and Drs. Glassberg and Kehrli in her
hypothetical to the VE.**

Because the Court has found the ALJ properly rejected
Plaintiff's testimony, lay-witness testimony, and the portion of
Dr. Kehrli's testimony related to Plaintiff's ability to perform
handling and fingering and also properly assigned some weight to
Dr. Glassberg's opinion, the Court concludes the ALJ did not err
at Step Five when she failed to include some of the limitations
indicated in that testimony and those opinions in her assessment
of Plaintiff's ability to do other jobs existing in the national
economy.

**B. The ALJ did not err when she relied on the VE's finding
as to the work in the national economy that someone
with Plaintiff's limitations could perform.**

Plaintiff contends the ALJ erred when she relied on the
VE's finding as to the work in the national economy that someone
with Plaintiff's limitations could perform because the jobs

19 - OPINION AND ORDER

identified by the VE did not adequately account for the sit/stand limitations in Plaintiff's RFC.

The VE identified two jobs at Step Five:  assembler and hand-packager.  Plaintiff contends the VE did not properly address Plaintiff's sit/stand limitations in opining a person with Plaintiff's limitations could perform these jobs because these are both "unskilled, production-paced types of jobs, which usually do not allow for a sit/stand option."  Plaintiff points out that the Commissioner has stated:

> In some disability claims, the medical facts lead to an assessment of RFC which is compatible with the performance of either sedentary or light work except that the person must alternate periods of sitting and standing.
>
> * * *
>
> There are some jobs in the national economy--typically professional and managerial ones--in which a person can sit or stand with a degree of choice. . . .  However, most jobs have ongoing work processes which demand that a worker be in a certain place or posture for at least a certain length of time to accomplish a certain task.  Unskilled types of jobs are particularly structured so that a person cannot ordinarily sit or stand at will.  In cases of unusual limitation of ability to sit or stand, a VS should be consulted to clarify the implications for the occupational base.

SSR 83-12, at *4.

Here the ALJ consulted with the VE at the hearing and specifically included Plaintiff's limitations in her hypotheticals as to Plaintiff's ability to sit and to stand as

set out in the RFC.  The VE opined even with those limitations Plaintiff could perform the jobs of assembler and hand-packager. There is not any indication in the record that the ALJ failed to include Plaintiff's sit/stand options in her hypotheticals to the VE or that the VE failed to consider them in his recommendation.

Accordingly, on this record the Court concludes the ALJ did not err when she relied on the VE's finding as to the work in the national economy that someone with Plaintiff's limitations could perform because the jobs identified by the VE included consideration of Plaintiff's sit/stand limitations as set out in the RFC.

## CONCLUSION

For these reasons, the Court **AFFIRMS** the decision of the Commissioner and **DISMISSES** this matter.

IT IS SO ORDERED.

DATED this 21st day of November, 2012.

/s/ Anna J. Brown

_____
ANNA J. BROWN
United States District Judge

21 - OPINION AND ORDER